William R. McINTOSH, Appellant,

v.

UNITED STATES of America,
Appellee.

Joe Dale WILSON, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 18597, 18598.

United States Court of Appeals
Eighth Circuit.

Nov. 13, 1967.

David E. Blanton, of Blanton, Blanton & Rice, Sikeston, Mo., for appellants.

Robert M. Ornstein, Atty., Dept. of Justice, Washington, D. C., for appellee, Fred M. Vinson, Jr., Asst. Atty. Gen., Edward T. Joyce, Atty., Dept. of Justice, Washington, D. C., on the briefs.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

William R. McIntosh and Joe Dale Wilson have appealed from judgments of conviction entered upon a jury verdict finding them guilty of violating 18 U.S.C. § 1952 (1961). Count III of a three count indictment, the only one on which appellants were convicted, charged in substance that they and one Walter Richardson, Jr.[1] in violation of Section 1952(a) (2) used a facility of interstate commerce, a telephone, with intent to commit a crime of violence to further the unlawful activity of extortion, "said unlawful activity being in violation of the laws of the State of Missouri, Section 560.13[0] * * *." The indictment further alleged that these three individuals either placed or caused to be placed a long distance telephone call from Sikeston, Missouri to Memphis, Tennessee, and demanded of one William Tanner $5,000.00 for the release of his brother, Henry Tanner, and that they performed or caused to be performed various acts facilitating the perpetration of their extortion scheme.

There is no dispute as to the pertinent facts giving rise to the prosecution. The appellants did not testify and offered only one piece of documentary evidence.

On April 23, 1965 Walter Richardson, Jr. placed a long distance telephone call to Henry Tanner in Memphis, Tennessee. Pursuant to the conversation he had with Richardson, Tanner and a friend, Ralph deVelasco, traveled by automobile to Sikeston, Missouri where they met Richardson and the appellants at the latter's place of business. After Tanner had arrived, Richardson announced that he and the appellants had set a trap for Tanner. At this point McIntosh brutally assaulted Tanner, while Richardson fiendishly fired a shotgun over the head of Tanner. Richardson contended that Tanner owed them $5,000 which they intended to get that night or kill him. Wilson made a telephone call to William Tanner, Henry's brother, in Tennessee. Henry conversed with his brother, and in substance asked him to raise $5,000.00 to secure his release. Wilson interrupted this conversation and stated to William Tanner that he would be informed "where to deliver the money later." After the conversation William Tanner called the F.B.I. and reported the incident.

Shortly after the telephone call Henry was forcibly escorted from the scene of the assault by Richardson and McIntosh. Later, after an apparent change of heart, appellants and Richardson released Tanner and deVelasco, and they returned to Memphis. Henry was hospitalized and treated for the injuries he sustained as the result of the assault and beating at the hands of Richardson and McIntosh. No money was ever paid to either the appellants or Richardson.

The principal question before this Court is whether the government, in order to sustain a conviction under Section 1952, must show that appellants have actually completed or consummated the underlying unlawful activity punishable under state law, that is, have procured money from the victim of their extortion scheme, or need only demonstrate that appellants have used interstate facilities with the intent to commit a crime of violence in furtherance of their scheme to extort money, and thereafter have engaged in conduct designed to promote the unlawful activity.

Appellants filed timely motions to quash the indictment on the ground that

1. Richardson died subsequent to the return of the indictment and before trial.

it failed to charge an indictable offense under Section 1952. They now contend in a brief prepared by their trial counsel[2] that the court erred in denying their motions and in instructing the jury that it was not necessary that appellants have completed their extortion plot in order to be convicted under Section 1952. They premise their contention upon the ground that the indictment alleged only that appellants' unlawful activity violated Section 560.130 of the Missouri Statutes,[3] and that extortion, in contrast to an attempt to extort, is a prerequisite for an offense under Section 560.130. They argue from this premise that the proscription of the Missouri Statute was not violated for the reason that no money was paid to bring about the release of Henry Tanner. Hence they submit that an essential element of the offense under Section 1952 is lacking and therefore their convictions cannot stand. For the reasons stated below we sustain the district court's action and affirm.

■ We take a different view of the prerequisites for an offense under Section 1952. That Section provides in pertinent part:

"(a) Whoever * * * uses any facility in interstate or foreign commerce * * * with intent to—

(1) * * *

(2) commit any crime of violence to further any unlawful activity; or

(3) * * *

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section 'unlawful activity' means * * * (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

Considered in light of its plain meaning Section 1952(a)(2) makes it unlawful for any person to utilize any interstate facility, including the telephone, with the intent to commit any crime of violence which would further an unlawful activity, such as extortion, in violation of state law. The proscribed conduct is the use of interstate facilities with the requisite intent to promote some unlawful activity, rather than the commission of acts which may be in violation of the state law. The inclusion in the indictment of an allegation that the unlawful activity was in violation of state law does not mean, as appellants argue, that prosecution under Section 1952 must fail in the absence of proof that the unlawful objective (here extortion) was fully accomplished. Consummation of the state substantive offense is not the indispensable gravamen of a conviction under Section 1952. Reference to the state law is necessary only to identify the type of unlawful activity in which the accused was engaged. Indeed, the indictment would probably be subject to attack if it failed to allege the state crime the accused had intended to violate by means of an interstate facility.[4]

---

2. Appellants were represented by appointed counsel at trial. After appellants' conviction appointed counsel filed a brief in this Court in their behalf. Subsequently, he was relieved by this Court and another attorney was appointed to represent the appellants.

3. Mo.Stat.Ann. § 560.130 (1939) provides in pertinent part:
"If any person shall, either verbally or by a written or printed communication, * * * threaten to do any injury to the person or property whatever of any one, with a view or intent to extort or gain any money or property of any description belonging to another, and shall, by intimidating him with said * * * threat, extort or gain from him any money or property, every such offender shall be deemed guilty of robbery in the third degree."

4. In seeking to counter the contention that appellants did not violate any Missouri Law the government, in a supplemental brief, has cited Missouri Statutes and numerous Missouri cases in support of the proposition that the appellants could have been prosecuted by the State of Missouri for attempted extortion. The argument of the government in this connection is

Appellants place considerable reliance upon Marshall v. United States, 355 F.2d 999 (9th Cir. 1966), cert. denied, 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54 (1966), to support their thesis that where the unlawful activity is extortion, money or property must be procured from the victim in order to sustain a conviction under Section 1952. Appellants assume that the extortion plot in *Marshall* was consummated and that money was in fact obtained. Although the Ninth Circuit in *Marshall* did not clearly delineate the facts relating to the unlawful conduct, we have satisfied ourselves by reference to the briefs filed therein that the facts are analogous, and that the defendants attempted to but did not accomplish their plan to extort money.[5] We glean from the language of the *Marshall* opinion that although the "unlawful activity" of extortion must be one defined and proscribed by state law, it need not be an accomplished fact to sustain a conviction under Section 1952, so long as the other elements of the statute are alleged and proven.

One of the crucial questions in *Marshall* was whether subdivision (2) of Section 1952(b), which defines "unlawful activity" to include extortion, encompassed a single act of extortion as well as a continous course of extortion that had been accomplished or facilitated through interstate facilities. The Court concluded that Section 1952(b) (2) did apply "to the facts charged herein—travel with *intent* to carry on or facilitate an unlawful activity—to-wit: a single act of extortion." 355 F.2d at 1003. (Emphasis supplied.)

Other decisions, we believe, support our interpretation of Section 1952. In particular, United States v. Azar, 243 F.Supp. 345 (E.D. Mich.1964), although factually distinguishable, is apposite to

the legal issue before us. In that case the defendants were charged under Section 1952 with transporting from one state to another "tip sheets" in connection with certain gambling activities. One of the main contentions for acquittal in behalf of the defendants was that the government had failed to prove that any of their actions constituted a violation of either the laws of the State of Michigan or of the United States. They argued that their distribution of "tip sheets" violated no Michigan Law and that none of their actions with respect to the "tip sheets" constituted "unlawful activity" within the meaning of Section 1952. In rejecting their contention Judge Talbot Smith stated:

"Defendants miss the thrust of the law [Section 1952]. * * * It is not required that the travel be in itself a criminal act, nor that the subsequent act be itself, unlawful, if it does in truth facilitate the carrying on." 243 F.Supp. at 350.

We believe extensive discussion of other Section 1952 cases to be of little benefit in disposing of the issue before us. We have been cited to no authority in support of appellants' position. Our independent research discloses that the case law generally supports the government's position that accomplishment of the State substantive offense is not a prerequisite to a Section 1952 conviction. Cf. United States v. Bergland, 318 F.2d 159 (7th Cir. 1963), cert. denied sub nom., Cantrell v. United States, 375 U.S. 861, 84 S.Ct. 129, 11 L.Ed.2d 88 (1963), wherein the Court stated in sustaining an indictment under Section 1952:

"The indictment does not charge the defendants with 'gambling.' Rather, the defendants are charged with interstate travel with the intent to promote a business enterprise involving

---

indeed persuasive. However, in view of the premise upon which we affirm the convictions, we pretermit discussion of the alternative position advanced by the government.

5. The Court, moreover, confirms our view that Marshall's extortion plot was frus-

trated by stating that Section 1952(a) (1), although charged in Count one of the indictment, had no bearing on the case since there were no proceeds of the "unlawful activity" to distribute.

gambling offenses. This is broader than a charge that the defendants themselves engaged in gambling. Travel with the requisite intent plus a subsequent act in furtherance of that intent, would be all that is required." 318 F.2d at 161.

See also United States v. Teemer, 214 F.Supp. 952, 957–958 (N.D. W.Va.1963).

■ Counsel who represented appellants in this Court conceded with commendable candor during oral argument that the fulfillment of appellants' extortion scheme was not necessary in order to sustain their conviction. Counsel did, however, in oral argument and in his supplemental brief, urge that Section 1952 was not enacted or designed to encompass a case of this nature. The underlying theme of his argument is that appellants and their victim were engaged merely in a drunken brawl and not in an organized scheme of extortion, and that any effort to punish appellants should have been undertaken by the State of Missouri. Irrespective of the subjective motivations behind their actions, however, we nonetheless conclude that appellants' conduct falls squarely within the plain terms of the statute.

Appellants rely on the dictum in United States v. Laudani, 134 F.2d 847, 850 (3d Cir. 1943), to the effect that a federal criminal statute should not be construed to duplicate state offenses unless Congress has plainly exhibited its intention to do so. The decision of the Third Circuit, however, was reversed by the Supreme Court in United States v. Laudani, 320 U.S. 543, 64 S.Ct. 315, 88 L.Ed. 300 (1944), wherein the Court held, notwithstanding the existence of state statutes dealing with common extortioners and blackmailers, that the facts of that case were sufficient to bring Laudani's conduct within the proscription of the federal "Kick-Back Act," 40 U.S.C. § 276b (1934), for intimidating employees of a government contractor to relinquish part of their weekly compensation to the defendant.

■ Section 1952 in our view embodies a clear Congressional determination, not to proscribe the underlying state substantive offense, but rather to prohibit the use of interstate facilities with the intention of promoting the substantive state offense. The predominant federal interest in regulating the proper use of interstate facilities is clear and points out, we believe, the dichotomy between the respective state and federal offenses of extortion and use of interstate facilities with intent to extort.

Thus the fact that Missouri courts may have jurisdiction to prosecute appellants for assault, or attempted extortion, does not bar this prosecution. Congress has sought to remedy a distinct evil under Section 1952 even though the same set of circumstances may subject the offender to a state prosecution under different elements of proof. See, e.g., Ferina v. United States, 340 F.2d 837 (8th Cir. 1965), cert. denied, 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965); Kistner v. United States, 332 F.2d 978 (8th Cir. 1964); 21 Am.Jur. 2d Criminal Law § 394.

■ As a final argument in their arsenal appellants attack their conviction on the ground that there was a total lack of evidence to support a requisite element of the offense relating to the commission of subsequent acts in furtherance of their extortion plot. They contend that after completion of Wilson's phone call to William Tanner in Memphis, Tennessee nothing further was done to promote their "unlawful activity," and therefore an indispensable element of Section 1952 was merely alleged but not proven. The record however, does not bear out the appellants' position, but on the contrary irrefutably demonstrates that there were sufficient acts performed thereafter in furtherance of appellants' intent to extort money from William Tanner.

The judgments of conviction are affirmed.