UNITED STATES of America, Plaintiff,

v.

Mario BIAGGI and Meade Esposito, Defendants.

No. 87–CR–151.

United States District Court,
E.D. New York.

Nov. 25, 1987.

Andrew J. Maloney, U.S. Atty. by Edward A. McDonald, Attorney-in-Charge and Leonard Michaels, Sp. Attys., U.S. Dept. of Justice, Brooklyn, N.Y., for U.S.

Slotnick & Baker by Barry I. Slotnick, Richard A. Medina, New York City, for defendant Mario Biaggi.

Spengler Carlson Gubar Brodsky & Frischling by Edward Brodsky, Thomas H. Sear, Lawrence S. Hirsh, New York City, for defendant Meade Esposito.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Defendants were convicted of giving and receiving a thing of value "for or because of" an official act in violation of 18 U.S.C. § 201(f) and (g), and of interstate travel in aid of unlawful activity in violation of 18 U.S.C. § 1952 (the "Travel Act"). They were acquitted of giving and receiving a thing of value "corruptly" with "intent to influence" official action in violation of 18 U.S.C. § 201(b) and (c). Over the defendants' objection, the jury was instructed that a Travel Act conviction could be predicated on a violation of section 201(f) and (g) alone. The defendants now move to set aside the verdict.

The Travel Act provides that "[w]hoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, ... with intent to ... promote, ... establish, carry on, or facilitate the promotion, ... establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform [any unlawful activity]," shall be guilty of a crime. 18 U.S.C. § 1952(a). "Unlawful activity" is defined to include "bribery ... in violation of the laws of the United States." Section 201, under which defendants were convicted, is entitled "Bribery of public officials and witnesses." The relevant provisions read as follows prior to the 1986 amendments:

§ 201. Bribery of public officials and witnesses

. . . .

(b) Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official ... or offers or promises any public official ... to give anything of value to any other person or entity, with intent—

(1) to influence any official act; or

(2) to influence such public official ... to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States ... [shall be guilty of a crime].

(c) Whoever, being a public official ... directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself or for any other person or entity, in return for:

(1) being influenced in his performance of any official act; or

(2) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States ... [shall be guilty of a crime].

....

(f) Whoever, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly gives, offers, or promises anything of value to any public official ... for or because of any official act performed or to be performed by such public official ... [shall be guilty of a crime].

(g) Whoever, being a public official ... otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him ... [shall be guilty of a crime].

Defendants claim that the reference to bribery in the Travel Act does not apply to all of the crimes enumerated under section 201. They argue that only the paragraphs which require proof of corrupt intent to influence an official act, and not the paragraphs which require only proof that a gratuity was given "for or because of" an official act, can constitute the predicate offense of bribery under the Travel Act.

As with the majority of statutory construction issues, it is a near certainty that no congressperson who voted on the measure ever thought about the question now before this court. In *Perrin v. United States*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed. 2d 199 (1979), the Supreme Court pointed out that the legislative history of the Travel Act is sparse, and it is apparent from the floor debates that "Congress made no attempt to define the statutory term 'brib-ery,' but relied on the accepted contemporary meaning." 444 U.S. at 45, 100 S.Ct. at 315–16., citing *Rewis v. United States*, 401 U.S. 808, 811, 91 S.Ct. 1056, 1059, 28 L.Ed. 2d 493 (1971). Following the lead of the *Perrin* Court, we look first to sources likely to reflect the accepted contemporary meaning of the word "bribery" as it was understood in 1962 when section 1952 was enacted.

Dictionary definitions in the main support the defendants' position that the common meaning of the word bribery is the giving of a thing of value corruptly and with intent to influence a specific official act. *See, e.g., Webster's New International Dictionary* 333 (Second Edition 1960) ("act of influencing the action of another by corrupt inducement"); *The Oxford English Dictionary* 373–74 (Compact Edition 1971) ("the act ... of giving or accepting money or some other payment with the object of corruptly influencing the judgement or action"); *The American Heritage Dictionary of the English Language* 164 (1969) ("anything ... offered or given to someone in a position of trust to induce him to act dishonestly"); *Black's Law Dictionary* 173 (5th Edition 1979) ("the offering, giving, receiving or soliciting of any thing of value to influence action as an official or in discharge of ... public duty"); *Ballentine's Law Dictionary* 155 (3rd Edition 1969) ("the voluntary giving or receiving of anything of value in corrupt payment for an official act done or to be done or with the corrupt intent to influence the action of any other person professionally concerned with the administration of public affairs").

Scholars and commentators who have analyzed the crime of bribery, however, recognize the elusiveness of a precise definition of it, and have been more willing to afford it a broad scope. The treatises which define bribery do not consistently require corrupt intent to influence as an element of that offense. One does state that "a corrupt intent to influence, or be influenced in, the discharge of official duties is a necessary element of the crime of bribery." 12 Am.Jur.2d *Bribery* § 6 (1984). But another implies that the word-

ing of the statute is dispositive on whether corrupt intent is required, stating *"except where bribery is made indictable irrespective of guilty knowledge*, it is essential to the offense that the offer, promise, or gift be made or accepted with the corrupt intent to influence the action of the officer in the discharge of his official duties." 11 C.J.S. *Bribery* § 2 (1938) (emphasis added). Similarly, one commentator noted that while "bribe" usually connotes corruption, "the lines between a tip and a bribe sometimes blur," particularly in circumstances where the bribe is given to a public official. Driscoll, The Illegality of Bribery: Its Roots, Essence, and Universality. 14 Cap.U.L. Rev. 1, 5 n. 14 (1984).

Also relevant in determining the commonly understood meaning of bribery are state law definitions. While bribery under state statutes has traditionally required an element of corruption, at the time the Travel Act was being debated there was already a trend away from including the term "corrupt" in state law definitions of the crime, although most state statutes still require some element of intent to influence for conviction under the most serious form of bribery. At its 1962 meeting, the American Law Institute approved the elimination of the word "corrupt" from its definition of bribery, a change adopted by a great majority of states in revisions and proposed revisions of their bribery statutes. *See* Model Penal Code § 240.1, note 2 (1980), citing Ark. § 41–2703; Colo. § 18–8–302; Conn. §§ 53a–147, –148, –152, –153; Del. tit. 11, §§ 1201, 1203, 1264, 1265; Ga. § 26–2301; Haw. §§ 710–1040, –1073; Idaho § 18–1352; Ill. ch. 38, § 33–1; Ind. § 35–44–1–1; Iowa §§ 722.1, .2; Kan. § 21–3901; Ky. § 521.020; La. § 14:118; Me. tit. 17A, § 602; Minn. § 609.42; Mo. § 576.010; Mont. § 94–7–102; Neb. §§ 28–917, –920; N.H. § 640:2; N.J. § 2C:27–2; N.M. §§ 40A–24–1, 12; N.Y. §§ 200.-00, .04, .15, .20; N.D. § 12.1–12–0.1; Ore. §§ 162.015, .025; Pa. tit. 18, § 4701; P.R. tit. 33, §§ 4360, 4363; S.D. §§ 22–12A–6, –7, –11; Tex. § 36.02; Utah §§ 76–8–103, –105; Va. § 18.2–447; Wash. § 9A.68.010; W.Va. § 61–5A–3; Cal. (p) S.B. 27, §§ 14301, 14302; Mass. (p) ch. 268A, §§ 2, 3; Mich. (p) § 4705; S.C. (p) §§ 20.18, .33; Tenn (p) ch. 21, § 2102; Vt. (p) § 2.30.2; W.Va. § (p) 61–9–11.

More persuasive than these extrinsic definitions of bribery are those contained in the federal bribery law itself. Congressional understanding of bribery as a broadly-defined offense not necessarily requiring corrupt intent to influence can be inferred from the fact that section 201 on its face included both the paragraph (b) and (c) "corrupt intent" offenses and the paragraph (f) and (g) "for or because of" offenses under the common heading of "bribery." This fact alone was enough to convince the court in *U.S. v. Evans*, 572 F.2d 455 (5th Cir.1978), that sections (f) and (g) are encompassed by the term "bribery" as it is used in the Travel Act. In that case, the court denied the defendants' motion to set aside the Travel Act conviction on the ground that it was inconsistent with a conviction under section 201(g) and acquittal under paragraph (c)—the same motion now made by defendants in the case at bar. The *Evans* court relied on the fact that the Travel Act count had charged "bribery and attempted bribery" under section 201 "without mention of a specific subsection," implying that the court considered all of the section 201 subsections to constitute bribery offenses.

Defense contentions that paragraphs (f) and (g) were enacted after the Travel Act, and cannot therefore be used in determining the intended definition of bribery under that statute, are unpersuasive. Although the Travel Act was passed in 1961 and the revisions of the bribery law were passed in 1962, the provisions were considered and enacted by the same congress. In the House, the two measures were discussed and debated for the most part contemporaneously. Attorney General Kennedy's testimony before the House Judiciary Committee on May 17, 1961 in support of the proposed Travel Act came just three weeks after the President submitted his message to the same Congress advocating revisions in the bribery statutes. H.R.Rep. No. 966, 87th Cong., 1st Session. And on August 21, 1961, when the House of Representa-

tives passed a revised version of the Travel Act, it had already voted ten days earlier to adopt a measure consolidating the bribery laws into section 201 and to entitle that section "Bribery of public officials and witnesses."

The sequence in which these measures were passed is in any event of little moment, because the enactment of paragraphs (f) and (g) did not mark the first time that Congress included an offense that did not require corrupt intent to influence under the rubric of the bribery laws. The pre–1961 bribery statutes drew even less of a distinction between the two levels of mens rea than did the new section 201, often lumping the two together as the same offense and punishing them identically. In the 1958 edition of the United States Code, sections 206 and 207 criminalized the offering of a thing of value "because of *or* with intent to influence" a judge's decision, and receipt by such judge of the thing of value "because of *or* with intent to be influenced" (emphasis added). This meant that a defendant found to have given an unlawful thing of value would be guilty of a bribery offense even absent a finding of "intent to influence" (the language of what are now paragraphs (b) and (c)), so long as the thing of value was given "because of" an official act (the language of what are now paragraphs (f) and (g)). Similarly, section 208 prohibited the receipt by a juror of any money or thing of value "because of or with intent to be influenced" in his vote. Moreover, the bribery statute as it existed in 1961 used the term "bribe" rather loosely, without consistently imputing to it the requirement of corrupt intent to influence. Both sections 206 and 207 described the thing of value which was forbidden to be given "because of" an official act as a "bribe."

The legislative history of the new section 201 suggests that Congress did not view the measure as substantially changing the definition of bribery as it was understood at that time, but rather saw it as clarifying and consolidating the bribery laws as they currently existed. Senator Kefauver, a member of the Committee on the Judiciary, noted that the measure was intended to "consolidate into a single section ... the various existing bribery statutes," a consolidation which was to "make[ ] no significant changes of substance," and "would not narrow the broad sweep of the current bribery laws." 87 Cong.Rec. 21,981 (October 3, 1962). In moving for passage of the reform measure, Congressman Celler, the Chairman of the House Judiciary Committee, remarked, "This consolidation renders uniform the law describing a bribe and prescribing the intent or purpose which makes its transfer unlawful, and makes penalties more uniform." 107 Cong.Rec. 14,774 (August 7, 1961). Congressman McColloch stated at the conclusion of Congressman Celler's remarks that "the object of the Committee was to bring uniformity into the law, both with respect to the criminal conduct which constitutes bribery and the penalty for the offense." 107 Cong. Rec. 14,778 (August 7, 1961). *See also* S.Rep.No. 2213, 87th Cong., 2nd Session ("Section 201 would bring all these [bribery] categories within the provision of one section and make uniform the proscribed acts of bribery, as well as the intent or purpose making them unlawful.").

There is no reason to infer that the policy and purpose behind the "corrupt intent to influence" offenses is substantially different from that underlying the "for or because of" offenses. All sections of the bribery statute are aimed at preventing the evil of allowing citizens with money to buy better public service than those without money. The *Evans* court recognized that a lesser mens rea on the part of one who gives a thing of value to a public official does not necessarily translate into a lesser evil inflicted on society, noting that "[e]ven if corruption is not intended by either the donor or the donee, there is still a tendency in such a situation to provide conscious or unconscious preferential treatment of the donor by the donee, or the inefficient management of public affairs." 572 F.2d at 480. Supplementation of an official's income causes a deterioration of the political system in the same way as does outright bribery in the narrow sense. Recognizing this, the drafters of the Model Penal

Code, which like section 201 separates the offenses listed under the "bribery" heading into those which involve a *quid pro quo* arrangement and those which do not, characterized all of these offenses together as "designed to reach various means by which the integrity of government can be undermined." Model Penal Code Article 240, introductory note (1980).

Like any other form of bribery, income supplementation weakens the trust of the people in their elected representatives which is essential to the functioning of democratic government. As President Kennedy stated in his message to Congress regarding the revision of the bribery laws,

> There can be no dissent from the principle that all officials must act with unwavering integrity, absolute impartiality, and complete devotion to public interest. This principle must be followed not only in reality but in appearance. For the basis of effective government is public confidence, and that confidence is endangered when ethical standards falter or appear to falter.

1 Pub. Papers 326 (1961).

The crimes described in paragraphs (b) and (c) are undoubtedly more serious than those described in paragraphs (f) and (g). Arguably, a law which permits the stringent Travel Act penalties to be predicated on a conviction under sections (f) and (g) is overly harsh. But if that is the case, it is the responsibility of Congress to change that law. As the *Perrin* Court noted in adopting an expansive definition of Travel Act bribery rather than the narrow common-law definition, "Congress has clearly stated its intention to include violations of state as well as federal bribery law. Until statutes such as the Travel Act contravene some provision of the Constitution, the choice is for Congress, not the courts." 444 U.S. at 50, 100 S.Ct. at 318.

To suggest in the meantime that Congress intended in drafting the Travel Act to draw a distinction between the types of crimes described under the bribery statute not only runs contrary to the relevant legislative history, but ignores the broad remedial purpose of the Travel Act. It was designed to aid enforcement of a wide range of crimes whose interstate aspect made them difficult to investigate and prosecute by providing "material assistance to the States in combating pernicious undertakings which cross State lines." S.Rep. No. 644, 87th Cong., 1st Sess., 4 (1961) (quoting Attorney General Kennedy); H.R. Rep. No. 966, 87th Cong., 1st Session, 4 (1961) (same), quoted in *United States v. Nardello*, 393 U.S. 286, 292, 89 S.Ct. 534, 538, 21 L.Ed.2d 487 (1969). The *Nardello* court pointed out that "the purpose of the Travel Act was to aid local law enforcement officials." 393 U.S. at 290, 89 S.Ct. at 537.

A primary purpose of the Travel Act was to fight the activities of organized crime. *See United States v. Brecht*, 540 F.2d 45, 49 (2d Cir.1976); *see also* Comment, The Scope of Bribery under the Travel Act, 70 J.Crim.L. & Criminology 337 (1979) (concluding that only activities associated with organized crime should generally be punished under the Travel Act). But as noted by the Court of Appeals in *Perrin*, courts cannot conclude that *only* crimes typically associated with the underworld can be Travel Act predicate crimes. In refusing to draw a distinction in that case between the broad range of crimes punishable on the face of the statute and the narrower category of crimes within the purview of the organized crime activities specifically targeted by Congress, the Fifth Circuit stated, "[w]e genuinely doubt our expertise to make such a determination." *United States v. Perrin*, 580 F.2d 730, 733 (5th Cir.1978).

Nor is there any merit to defendants' contention that since the penalty which can be imposed under the Travel Act is equal to that which can be imposed under sections 201(b) and (c) but greater than the maximum under sections (f) and (g), Congress could not have intended to give the government the power to increase the penalty imposable under the latter by using it as a predicate for a Travel Act count. An additional penalty imposable under the Travel Act is reasonable since a Travel Act conviction requires proof of an additional element

beyond the predicate crime itself—use of interstate facilities—which enhances the seriousness of the offense by making the perpetrator more difficult to apprehend. Thus in *Perrin*, the Supreme Court held that commercial bribery in violation of New York state law, which carried a maximum sentence of three months imprisonment, fell within the purview of the Travel Act's bribery provision.

### Conclusion

Defendants' motion for a judgement of acquittal notwithstanding the verdict on the convictions under 18 U.S.C. § 1952 is denied.

So ordered.