
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 15-50467 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 2:15-cr-00131-JFW-1 |
| TEOFIL BRANK, AKA @JarecWentworth, AKA Jarec Wentworth, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
John F. Walter, District Judge, Presiding

Argued and Submitted June 8, 2017
Pasadena, California

Before: Reinhardt and Hurwitz,** Circuit Judges, and Berg,*** District Judge.

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

** This case was submitted to a panel that included Judge Kozinski, who recently retired. Following Judge Kozinski's retirement, Judge Hurwitz was drawn by lot to replace him. Ninth Circuit General Order 3.2.h. Judge Hurwitz has read the briefs, reviewed the record, and listened to oral argument.

*** The Honorable Terrence Berg, United States District Judge for the

(continued...)

Teofil Brank appeals his convictions for one count of transmitting threatening communications with intent to extort, in violation of 18 U.S.C. § 875(d); two counts of extortion and attempted extortion affecting interstate commerce by nonviolent threat, in violation of 18 U.S.C. § 1951(a) ("the Hobbs Act"); one count of using a facility of interstate commerce to facilitate unlawful activity, in violation of 18 U.S.C. § 1952(a)(3); and two counts of receiving proceeds of extortion, in violation of 18 U.S.C. § 880. He also appeals his sentence. For the reasons set forth below, we **AFFIRM**.

1. Brank first argues that extortion as defined in the Hobbs Act does not include threats causing fear of injury to reputation. Brank takes the position that only threats causing fear of physical violence or economic harm are cognizable as extortion under the Hobbs Act. This argument is not well-taken. Extortion under the Hobbs Act is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). That is precisely what occurred here; Brank obtained Burns' property, inducing Burns to part with it through wrongful use of fear that Burns' private life would be exposed. In *United*

***(...continued)
Eastern District of Michigan, sitting by designation.

2

*States v. Nardello*, 393 U.S. 286, 296 (1969), the Supreme Court held that "extortion," when left undefined in a federal criminal anti-racketeering statute (in that case, the Travel Act, 18 U.S.C. § 1952), encompassed threats to injure a victim's reputation. We cannot conclude that Congress adopted a narrower definition of "extortion" in the Hobbs Act. Brank's contention that the evidence was insufficient to establish extortion under the Hobbs Act must therefore be rejected.

2.　　Brank argues that the district court erred in denying his motion to dismiss for vindictive prosecution. Brank has not proffered evidence that the government acted out of "hostility or a punitive animus" in the pretrial context. *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168-69 (9th Cir. 1982). The district court found that the superseding indictment was finalized and approved before the plea negotiations occurred. There was no error in the denial of the motion.

3.　　We reject Brank's argument that the district court erred in admitting witness testimony about a gun and a photograph of an ammunition clip. The testimony was sufficiently attenuated from the Fourth Amendment violation that led to the gun's exclusion. *See United States v. Ceccolini*, 435 U.S. 268, 275 (1978). The district court's admission of both the testimony and the photograph

3

was not an abuse of discretion. *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991).

4.    Because a "rational trier of fact" could have found that Brank transmitted a communication containing a threat, we reject Brank's sufficiency-of-the-evidence challenge to his conviction under 18 U.S.C. § 875(d). *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

5.    Finally, Brank challenges his sentence as based on an incorrect calculation of the sentencing guidelines. Brank argues that the district court erred by separating the counts of conviction into Group A, relating to the extortion of $500,000 and the Audi, and Group B, relating to the transaction for the $1 million orchestrated by the FBI. Because these incidents were grouped as separate harms, the guidelines calculation increased from 57-71 months to 70-87 months. Brank made no objection to the grouping decision before the district court, so review is for plain error. *See United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010). According to § 3D1.2(b) of the Sentencing Guidelines, multiple counts "involving substantially the same harm" should be grouped if they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." But, Application Note 4 points out that § 3D1.2 "does not authorize the grouping of offenses that cannot

4

be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm)." On the evidence before it, the district court did not plainly err in concluding that Brank's conduct caused separate instances of fear and harm.

Appellant has filed two submissions pro se while represented by counsel (docket entries 45 and 52). Because an appellant represented by counsel may only file motions through counsel, this Court declines to entertain the pro se submissions.

**AFFIRMED.**

United States v. Brank, No. 15-50467
**REINHARDT**, Circuit Judge, concurring in part and dissenting in part:

I strongly disagree with the majority disposition regarding the scope of Hobbs Act extortion. The Hobbs Act was not intended to, and does not, encompass injury, or threatened injury, to reputation. Application of our ordinary tools of statutory interpretation reveals ambiguity. The definition of extortion itself is muddled—the adjective "threatened" inexplicably modifies "fear." 18 U.S.C. § 1951(b)(2). Moreover, all other violations of the Act require harm or threats of harm to person or property—indicating that the scope of harm for Hobbs Act extortion is similarly limited. By contrast, the Travel Act—which includes the generic "extortion" definition on which the majority relies— displays no such limitation. It instead encompasses a wide variety of "unlawful activit[ies]," ranging from failure to pay federal excise taxes on liquor to prostitution to bribery. 18 U.S.C. § 1952.

The Hobbs Act must be read in tandem with a similar and closely related statute, 18 U.S.C. § 875. Unlike the Hobbs Act, that statute expressly *includes* threats to reputation. The two statutes developed roughly in parallel, but the Hobbs Act and its predecessor, the Anti-Racketeering Act, never employed any such language. Instead, the Hobbs and Anti-Racketeering Acts always targeted a narrower set of conduct—principally related to racketeering. *See Scheidler v. Nat'l Org. for Women*, 537 U.S. 393, 406-07 (2003). The legislative history of the Hobbs

1

Act likewise evinces Congress's paramount concern for harm, and threats of harm, to person and property—and no concern whatsoever regarding harm to reputation. *See, e.g.*, *Hearings Before Subcomm. No. 3 of the H. Comm. on the Judiciary on H.R. 5218, H.R. 6752, H.R. 6872, & H.R. 7067*, 77 Cong. 332, 377, 420-24 (1942).

The majority's reliance on the Travel Act case *United States v. Nardello*, 393 U.S. 286 (1969), and the federal generic definition of extortion used for that Act is wholly misplaced here. Unlike the Travel Act, the Hobbs Act defines extortion in a circumscribed manner—indicating that the Hobbs Act intended a more precise and limited definition. We ought not disregard that specific statutory definition, and the attendant interpretive tools, by assuming that Congress intended consistency with a statute that *lacks* a definition.

This is all the more true because the Hobbs Act is a criminal statute. We must interpret criminal statutes (and similar civil statutes, such as immigration laws) narrowly, because we recognize their especially weighty consequences for individuals' lives. Our jurisprudence must take into account both the severity of criminal penalties themselves and the web of collateral consequences that attend a criminal conviction—the potential for loss of voting rights; restrictions on movement; difficulty in obtaining employment, apartment leases, and admission to professional organizations; and, in many cases, the possibility of deportation to a place that is not now and may never have been home—with all the anguish and

2

hardship that attends the prospect of permanent separation from family, and the anxiety of not knowing at what moment this expulsion might occur. *See* Gabriel J. Chin, *The New Civil Death: Rethinking Punishment in the Era of Mass Conviction*, 160 U. Pa. L. Rev. 1789, 1799-1803 (2012).

These oftimes drastic consequences require a special vigilance on the part of courts to ensure that only clearly prohibited conduct results in criminal sanctions. The rule of lenity is, consequently, a bedrock principle of statutory interpretation in criminal cases. *See, e.g.*, *Scheidler*, 537 U.S. at 408. Moreover, because criminal law is primarily a local not a national matter, we require a clear statement of congressional purpose before interpreting a federal criminal statute to encompass conduct already subject to state criminal penalties. Construing the scope of "extortion" as used in the Hobbs Act in light of these fundamental tenets requires us to resolve the obvious ambiguities against the government. Accordingly, I would overturn Brank's convictions under the Hobbs Act. I concur in the remainder of the majority disposition.