UNITED STATES of America, Plaintiff-Appellant,

v.

Robert Archie BERGLAND, Charles Elmer Cantrell, and William Gordon Donahue, a/k/a Bill Fletcher, Defendant-Appellees.

No. 14031.

United States Court of Appeals Seventh Circuit.

June 3, 1963.

William J. Mulligan, Asst. U. S. Atty., Milwaukee, Wis., Herbert J. Miller, Jr., Asst. Atty. Gen., Criminal Division, James B. Brennan, U. S. Atty., Edward T. Joyce, Brian T. Gettings, Attorneys, Department of Justice, Milwaukee, Wis., for appellant.

James M. Shellow, Dominic H. Frinzi, Gordon A. Borman, and Nicholas C. Catania, Milwaukee, Wis., Shellow & Shellow, Milwaukee, Wis., of counsel, for appellees.

Before HASTINGS, Chief Judge, and DUFFY and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal from an order of the District Court, granting defendants' motion to dismiss the indictment. The defendants were charged in a three-count indictment with violating and conspiring to violate Title 18, §§ 1084 and 1952, United States Code.

Section 1084, Title 18, provides in pertinent part:

"(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers,

or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both."

Section 1952, Title 18, provides in pertinent part:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

\* \* \* \* \* \*

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, \* \* \* in violation of the laws of the State in which they are committed or of the United States, \* \*."

Count 1 was the conspiracy count charging the three defendants and one co-conspirator, not named as a defendant, with conspiracy to violate said §§ 1084 and 1952. The counts spelled out the use of a telephone in interstate commerce for the transmission of bets and wagers and information assisting in the placing of bets and wagers on horse races. It charged travel by defendants in interstate commerce from Milwaukee, Wisconsin, to Hot Springs, Arkansas, to promote the unlawful activity described, and set forth in some detail how defendant Donahue and one Rhode would receive the results of races in Hot Springs and transmit the names of the winners in the horse races to defendants Bergland and Cantrell in Milwaukee; that defendant Bergland would then "past-post",[1] that is, place bets with bookmakers in Milwaukee, based upon the information which he had received.

Count 1 also charged that defendants Bergland and Cantrell would travel from Milwaukee, Wisconsin, to Hot Springs, Arkansas, and would receive the results of horse races run at Hot Springs and by means of telephone, would transmit the results to defendant Donahue who would thereupon "past-post" bookmakers in Milwaukee.

Count II charged defendant Donahue traveled in interstate commerce and caused one Rhode to do likewise, from Milwaukee, Wisconsin to Hot Springs, Arkansas, with intent to promote, manage and establish an unlawful activity, to-wit: a business enterprise involving gambling offenses, in that defendant, being engaged in the business of betting and wagering, used a telephone to transmit from Hot Springs, Arkansas, to Milwaukee, Wisconsin, results of horse races, which information assisted in the placing of bets and wagers on horse races in violation of §§ 1084 and 1952, Title 18 United States Code.

Count III was quite similar to Count II. It charged defendants Bergland, Cantrell and Donahue, on a date different from that stated in Count II, had caused others to travel in interstate commerce

---

1. United States Senator John L. McClellan who was Chairman of a Senate Select Committee which conducted an extensive investigation of various criminal activities, in his book "Crime Without Punishment", on page 239, refers to "past-post betting." His description of the operation of a type of past-post betting is as follows: " \* \* \* His companion would post himself in a phone booth near by—not more than half a city block away. He had a phone line open to the wire service to which the pair subscribed. By telephone he received from the wire service the name of a horse winning a race at a certain track. Within seconds that information was transmitted to the confederate in the bookmaker's establishment, who then immediately placed a bet on that horse and collected his winnings a few minutes later when the bookmaker received word of the race's outcome. This is a practice called 'past-post betting' and is dependent upon a swift wire service. \* \* \*"

from Milwaukee, Wisconsin, to Hot Springs, Arkansas, for the purposes set forth in Count II.

■ The indictment does not charge the defendants with "gambling." Rather, the defendants are charged with interstate travel with the intent to promote a business enterprise involving gambling offenses. This is broader than a charge that the defendants themselves engaged in gambling. Travel with a requisite intent plus a subsequent act in furtherance of that intent, would be all that is required.

It was the view of the learned District Judge that the terms "gambling", "bets" and "wagers" in the statutes now before us are terms which are unambiguous; that they are activities involving the element of chance; that the scheme charged against the defendants herein was "a sure thing" and hence no element of chance was involved. He pointed out that criminal statutes should be strictly construed.

The District Judge was also of the opinion that there was no need to refer to legislative history, and cited among others, the case of Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442. However, we note in the opinion in that case, 242 U.S. at pages 485–486, 490, 37 S.Ct. at pages 194, 196, the Supreme Court said: "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise * * *. Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them. * * * Reports to Congress accompanying the introduction of proposed laws may aid the courts in reaching the true meaning of the legislature in cases of doubtful interpretation * * *."

■ We cannot agree with the District Judge's statement that the statutes with which we are here concerned are so plain and unambiguous that there is no need to resort to legislative history. The vigorously expressed differing opinions on that point in the arguments of this case gives some indication at least that ambiguity does exist. We think this Court should take advantage of all aids available in order to arrive at the legislative purpose. United States v. Congress of Industrial Organizations, 335 U.S. 106, 113, 68 S.Ct. 1349, 92 L. Ed. 1849; United States v. Universal C. I. T. Credit Corporations, 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260. We hold that a reference to legislative history in this case is proper.

Congressman Emanuel Celler, Chairman of the House Committee on the Judiciary, the Committee which held hearings on the anti-racketeering bills and favorably reported the bills to the House, and floor manager of the bills when they were taken up in the House of Representatives, in explaining the need for the bill which became Section 1084 of Title 18, United States Code, specifically spoke of past-posting operations as one of the evils that Section 1084 would combat. He stated: "Modern bookmaking and gambling, we know, depends upon rapid communications of betting odds and lay-offs. This communication enables the gambler in far distant parts to know in split seconds the results, for example of a horse race, before he actually takes the bet from an innocent player. They also lay off the bets, so he reaps rich rewards because of his advance information which he does not impart to the innocent bettor." P. 15446 Congressional Record, daily edition, August 21, 1961.

The testimony of the Attorney General before the House Committee showed that officials of the Government were fully aware of the use of wire communication facilities for past-posting operations. In speaking of rapid wire service he testified: " * * * They protect the bookmaker * * * [from] accepting a bet on a horse which has already won the race."

United States Senator Eastland, Chairman of the Committee on the Judiciary and floor manager of the anti-racketeering legislation on the floor of the senate, in explanation of Bill S–1657, now 18

**162**

U.S.C. § 1953, showed that it was the intention of Congress to overcome certain restrictive court decisions such as France v. United States, 164 U.S. 676, 17 S.Ct. 219, 41 L.Ed. 595. The District Court placed considerable reliance on the decision in the France case.

The judgment of the District Court is reversed with directions to vacate the court's order granting defendants' motion to dismiss.

Reversed.