**UNITED STATES of America**

v.

**Perry ALPIRN, Defendant.**

**No. 65 Cr. 352.**

United States District Court
S. D. New York.

Dec. 16, 1969.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, by James D. Zirin, Asst. U. S. Atty., for plaintiff.

Lauritano & Schlacter, by Amedo L. Lauritano, New York City, for defendant.

## OPINION

TYLER, District Judge.

This case is before this court on an indictment, filed April 14, 1965, charging defendant Perry Alpirn in four counts with violation of 18 U.S.C. §§ 1084(a) and 2. On September 25, 1969, defendant in open court waived his right to a trial by jury and agreed to proceed on stipulated facts.

The essential admitted facts are that at all relevant times Alpirn was in business as a "turf advisor". As such, he would provide his clients with predictions as to the likely winners of given horse races. Should the selected horse win, the client was requested to remit to Alpirn the equivalent of a five dollar bet on the recommended horse. In the event the selected horse lost, the client would owe him nothing. In transacting this business, Alpirn, by making telephone calls from New York City, New York, to parties in Connecticut, Ohio and Illinois, recommended four horses on the four occasions set forth in the indictment. The sole issue for determination is whether or not Mr. Alpirn's admitted activities

are proscribed by 18 U.S.C. §§ 1084(a) and 2.

Defendant's chief claim is that, although he was admittedly engaged in the "turf advisory" business, he was not in the "business of betting and wagering" as that phrase is used in Section 1084(a). To support his position, Alpirn points essentially to the language of Judge Will in Kelly v. Illinois Bell Telephone Co., 210 F.Supp. 456, 466 (N.D.Ill.1962), aff'd, 325 F.2d 148 (7th Cir. 1963), where the court, rejecting the government's contention that Section 1084(a) includes "anybody" who transmits information assisting in the placing of bets, stated:

> "Giving effect to all the language actually used by Congress, it must be concluded that the prohibitions of Section 1084(a) are applicable only to persons who, in the normal context of the words, can be said to be 'engaged in the business of betting and wagering'."

Defendant also argues that the legislative intent in enacting Section 1084(a) was to assist the various states in the enforcement of their laws pertaining to modern bookmaking activities. See H.R.Rep.No. 967, 87th Cong., 1st Sess. 2 (1961), U.S.Code Cong. and Admin. News, p. 2631 (1961). He concludes, therefore, that the admitted facts do not permit a finding that he or any of his clients were engaged in betting, wagering or bookmaking activities, in the normal context of those words, in violation of any state law.

The government has advanced three arguments in support of their contention that Alpirn's activities fall within the statute; first, "touting" horses in return for a fee which is wholly dependent upon chance constitutes the business of betting and wagering; second, Alpirn is responsible for the wagering activities of his clients because, by his recommendations and advice, he became his clients' joint-venturer, they contributing the money, he the "know-how"; third, the admitted facts permit an inference that, by the transmission of essential wagering information, Alpirn was providing vital assistance to bookmakers and their clientele, the very thing Section 1084(a) was designed to prevent.

For this court to find a violation of Section 1084(a), it must be convinced beyond a reasonable doubt that defendant, while being in the business of betting and wagering, knowingly used a wire communication facility to transmit information assisting in the placing of bets and wagers. Concededly, Alpirn while engaged in a business enterprise, knowingly placed telephone calls "interstate" in order to transmit advice and information which tended to or did assist in the placing of wagers. Nevertheless, I conclude that the activities of this defendant are not certainly proscribed by Section 1084(a) because I cannot find that he was engaged in the business of betting and wagering.

A fundamental principle for the interpretation of criminal statutes is that they be strictly construed. United States v. Bergland, 209 F.Supp. 547 (E.D.Wis.1962), rev'd on other grounds, 318 F.2d 159 (7th Cir. 1963). Furthermore, it is well settled that words in a statute shall be given their normal and ordinary meaning. Old Colony R. Co. v. Comm'r, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484 (1932).

Applying these principles, I turn to the government's first contention that "touting" horses in return for a fee wholly dependent upon the outcome of the predicted race constitutes a betting and wagering contract within the meaning of Section 1084(a). Neither existing case law nor the legislative history of Section 1084(a) firmly supports this argument. The decisions interpreting this section, with the exception of Kelly, involve situations where the defendant was himself making or accepting bets directly and using interstate wire communication facilities to further these activities. See Truchinski v. United States, 393 F.2d 627 (8th Cir. 1968); Cohen v. United States, 378 F.2d 751 (9th Cir. 1967); United States v. Bergland, 209 F.Supp. 547 (E.D.Wis.1962)

rev'd 318 F.2d 159 (1963); Sagansky v. United States, 358 F.2d 195 (1st Cir. 1966); United States v. Yaquinta, 204 F.Supp. 276 (N.D.W.Va.1962).

In *Kelly*, the parties were engaged in the publication of a daily racing form. It was the opinion of Judge Will, after a careful analysis of the legislative history, that Section 1084(a) applied to persons other than bookmakers. The court also stated, however, that Section 1084(a) did not cover everyone who transmitted information assisting in the placing of bets and wagers but only those persons who in the "normal context of the words can be said to engage in the business of betting and wagering".

■ Judge Will concluded that the parties were not so engaged and therefore had not violated Section 1084(a). Similarly, it is my view that the arrangement between Alpirn and his clients was not a betting or wagering contract as that arrangement is normally understood and was not the type of activity Congress had in mind when Section 1084(a) was enacted. See H.R. Rep.No. 967, 87th Cong., 1st Sess. 2 (1961), U.S.Code Cong. and Admin. News, p. 2631 (1961). Had Congress intended to prohibit "touting" activities of this sort, it could have chosen to broaden the opening language of Section 1084(a) rather than to limit coverage to persons engaged in betting and wagering activities.

■ The government's argument that Alpirn and each client became joint venturers has superficial appeal by suggesting that in effect Alpirn has placed bets through his clients. As will be discussed hereinafter, sober reflection indicates that there is no firm factual basis for such a surmise. Concededly, some of Alpirn's clients may have acted upon his advice and placed wagers on the recommended horse. But all that the stipulated facts establish is that Alpirn's clients agreed to share their winnings with him —if in fact they wagered and were fortunate to win. These facts do not show that his clients were contractually bound to wager at all. Moreover, unlike a true joint venturer, Alpirn did not share in the losses from the alleged venture.

■ Finally, the government would have me infer from Alpirn's activities that he is servicing bookmakers and their clientele and that this fact is sufficient to establish that defendant is in the business of betting and wagering within the meaning of Section 1084(a). Given the facts to be established, the government's interpretation of Section 1084(a) may be correct. The legislative history strongly suggests that Congress was concerned not only with bookmakers themselves but also with those persons who use wire communication facilities to transmit vital gambling information to bookmakers. See H.R.Rep.No. 967, 87th Cong., 1st Sess. 2 (1961), U.S.Code Cong. and Admin.News, p. 2631 (1961); S.Rep.No. 588, 87th Cong., 1st Sess. 2 (1961); see also the testimony of Attorney General Robert F. Kennedy, Hearings on S.1656 Before Subcomm. No. 5, House Committee on the Judiciary, 87th Cong., 1st Sess., ser. 16 at 24 (1961); for an opposing viewpoint, see Rep.No. 1310 of the Subcomm. on Investigations of the Senate Comm. on Government Operations, 87th Cong., 2d Sess., at 46 (1962).

It is neither necessary nor feasible to reach this issue, however, because in my view the admitted facts do not permit an inference that Alpirn's activities assisted bookmakers. There is not one shred of evidence that defendant's clients were bookmakers or that they engaged in any illegal betting activities in response to his recommendations. The prosecution apparently has overlooked that the purpose of Section 1084 "is to assist the various States * * * in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses and to aid in the suppression of organized gambling activities * * *." H.R. Rep.No. 967, 87th Cong., 1st Sess. 2 (1961), U.S.Code Cong. and Admin. News, p. 2631 (1961). Yet no evidence has been introduced to show that Al-

pirn's clients, acting upon his advice, violated any state gambling laws or engaged in any organized gambling activities.

The defendant has advanced an additional argument in his brief to the effect that Section 1084(a) as applied to him in the indictment violates his First Amendment rights. It is unnecessary to reach this contention in view of my findings and conclusions hereinabove. Defendant is acquitted of the four charges set forth in the indictment. Let a judgment be entered accordingly.