NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0407n.06
No. 12-4384

FILED
Jun 06, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| EDWARD CAMPBELL, III, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, KETHLEDGE, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge**. A jury convicted Defendant Edward Campbell, III, of participating in a Racketeering Influenced and Corrupt Organization (RICO) Act conspiracy under 18 U.S.C. § 1962(d). The district court sentenced Campbell to 90 months' imprisonment and three years of supervised release. In this appeal, Campbell challenges the sufficiency of the evidence and the district court's calculation of his offense level. We AFFIRM.

**I.**

The indictment targeted the alleged racketeering activity of a Youngstown, Ohio, street gang known as LSP. It charged twenty-three defendants in forty-two counts. Campbell was charged only in count one, the RICO conspiracy charge, which alleged that he conspired with members and associates of LSP to commit racketeering offenses including murder, robbery, and drug trafficking. Counts two through forty-two charged his codefendants with various crimes including firearms and drug-trafficking offenses, retaliation, theft, attempted murder, and conspiracy to commit murder. Under count one, the indictment attributed three "overt acts" to

Campbell. It alleged that he regularly sold cocaine and marijuana, that he had been found in possession of a plastic bag containing numerous individually wrapped bags of crack cocaine, and that a photograph posted to a MySpace page showed him making a hand sign signifying membership in LSP. R. 301, Superseding Indictment, ¶¶ 45, 116, 120.

At trial, the photograph showing Campbell making the hand sign was placed in evidence, and Youngstown Police Sergeant Michael Lambert testified that gang members use graffiti, photographs, and social media sites to identify themselves as gang members and to incite rival gang members to violence. LSP member Wayne Kerns testified that he saw Campbell sell cocaine at a "dope house" run by Campbell's codefendant, an alleged leader of the enterprise, Derrick Johnson, Jr. And, Officer Chris Pasvanis testified to arresting Campbell for cocaine trafficking after finding Campbell in the living room of his grandmother's apartment with a plastic bag containing twenty-six individually wrapped rocks of crack cocaine in plain view on the coffee table. Campbell's cousin, LSP member Aldric Jones, was also in the apartment; he was sitting at the kitchen counter with loose marijuana in front of him. ATF Agent John Smerglia interviewed Campbell after his arrest. Smerglia, and parole officer Todd Friend, who was present for the interview, testified that Campbell admitted to being a member of LSP and to smoking and selling marijuana.

The prosecution also introduced evidence that Campbell participated in the March 14, 2009 drive-by shooting of Sherrick Jackson. The shooting was the culmination of an ongoing dispute between Jackson and LSP. On October 16, 2008, LSP members Derrick Johnson, Jr. and Dominique Callier had fired shots into the house where Jackson lived with his mother, Deborah Newell. Two weeks later, when Newell accused LSP member Daquann Hackett of participating in the shooting, the conversation escalated into a gunfight between Hackett and Newell's friend

2

Sherman Perkins. Newell moved out of LSP territory in an effort to escape the violence, but in the early morning of March 14, 2009, a "Molotov cocktail" was thrown through the window of her new house. Later that day, two cars pulled up to the house and the occupants fired shots toward the house, injuring Jackson and a second person. Newell was home at the time and identified Campbell as among the shooters. Wayne Kerns, who participated in the drive-by shooting, testified that he, Hackett, Johnson, and LSP member Dominique Callier, were in one car and Campbell was in a second car with LSP members Braylyn Williams and Tre'Von Mason. According to Kerns, Campbell later admitted to him that he had fired shots toward the house using a Mossberg shotgun. Forensic evidence confirmed that a Mossberg shotgun was used in the shooting.

## II.

### A. Sufficiency

When reviewing a challenge to the sufficiency of the evidence, this court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). "[C]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). Even the uncorroborated testimony of a single accomplice can support a conspiracy conviction under federal law. *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986).

Campbell argues that the government's evidence "at best," established "that he associated with persons who may have been in the street gang," but it was not sufficient for a jury to find that Campbell was a member of the conspiracy. We disagree.

To prove Campbell's participation in the RICO conspiracy, the government had to show that Campbell "agreed that either he or someone else would commit at least two RICO predicate acts." *United States v. Lawson*, 535 F.3d 434, 445 (6th Cir. 2008); *see also United States v. Saadey*, 393 F.3d 669, 676 (6th Cir. 2005) (the government must show that the defendant "intended to further 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] criminal offense . . . .'") (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). Evidence of an agreement need not be direct; it may be inferred from the defendant's conduct. *United States v. Hughes*, 895 F.2d 1135, 1141 (6th Cir. 1990). Here, Smerglia's and Friend's testimony identified Campbell as a member of LSP and Kerns's and Newell's testimony described Campbell committing, alongside other LSP members, racketeering acts alleged in the indictment: narcotics trafficking at a dope house run by a leader of the enterprise, and the attempted murder of an individual feuding with LSP. A rational juror could infer from this evidence that Campbell agreed that he or someone else would commit two RICO predicate acts. *Lawson*, 535 F.3d at 445.

Campbell acknowledges the evidence against him, but he dismisses it, arguing that Smerglia's and Friend's testimony regarding Campbell's statements during the interview were "uncorroborated" and "unreliable," and that Newell's and Kerns's testimony was not credible because Newell did not identify Campbell as a shooter in her initial statements to police or her grand-jury testimony, and Kerns received a five-year reduction in his sentence after testifying. But we are not free to assess witness credibility when reviewing a sufficiency-of-the-evidence

4

claim. *See United States v. Bailey*, 444 U.S. 394, 414–15 (1980) ("It is for [jurors] . . . and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story.") (quoted in *Gallo*, 763 F.2d at 1518). The witness testimony in the record supports the verdict. That is enough to defeat Campbell's claim of error. *Gallo*, 763 F.2d at 1518.

**B.**    <u>**Sentencing**</u>

Campbell also challenges the district court's determination that the drive-by shooting of Sherrick Jackson constitutes "underlying racketeering activity" under U.S.S.G. § 2E1.1. We review the district court's application of the United States Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002).

Section 2E1.1 of the guidelines provides that the base offense level for RICO offenses "is either 19 or 'the offense level applicable to the underlying racketeering activity,' whichever is greater." *United States v. Tocco*, 200 F.3d 401, 428–29 (6th Cir. 2000) (quoting U.S.S.G. § 2E1.1). Conduct is "underlying racketeering activity" under § 2E1.1 if it is "relevant conduct" as defined in U.S.S.G. § 1B1.3(a)(1). *United States v. Tocco*, 306 F.3d 279, 286 (6th Cir. 2002). Section 1B1.3(a)(1) defines "relevant conduct" as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and, "in the case of a jointly undertaken criminal activity . . . , all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(A) & (B). "The existence of relevant conduct is determined at sentencing by a preponderance of the evidence." *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000).

Here, Campbell's presentence report recommended an offense level of 19, relying solely on the overt acts alleged against Campbell in the indictment. *See* PSR 6–7. The government objected, asserting that the drive-by shooting of Sherrick Jackson was "underlying racketeering

5

activity" attributable to Campbell, and therefore Campbell's offense level should be the offense level applicable to "assault with intent to commit murder; attempted murder," in U.S.S.G. § 2A2.1. Section 2A2.1(a) provides for a base offense level of 33 "if the object of the offense would have constituted first degree murder," and otherwise provides for a base offense level of 27. Section 2A2.1(b) allows for a two-, three-, or four-level increase based on the severity of the victim's injuries. The government argued that Campbell's offense level should be 35 because, it contended, the object of the drive-by shooting was first-degree murder and Jackson "sustained severe bodily injury" in the shooting.

After hearing from the parties on the issue at sentencing, the district court assigned Campbell an offense level of 27. The court had just assigned an offense level of 27 to Campbell's codefendant Terrance Machen based on the same guidelines for Machen's participation in a different gang shooting. Turning to Campbell, the district court stated,

> Now, Edward, we come to you. And you are in a similar situation that Terrance is in, and I'll tell you right from the outset I'm not going to adopt the government's recommendation of the total offense level of 35.
>
> I'm going to have a finding, because of the overt act in that as well, a total offense level of 27 with a criminal history category three, and that gives us a range of 87 to 108 months. And I'm going to place you in the custody of the Bureau of Prisons to be imprisoned for a term of 90 months . . . .

Although the district court's explanation of the basis of the sentence was brief, read in context, it is evident that the court determined that the shooting was relevant conduct under § 1B1.3(a)(1)(A), assigned Campbell an offense level of 27 under § 2A2.1(a), and sentenced Campbell at the lower end of the resulting guidelines range.

Campbell argues that this determination was in error because Kerns's and Newell's testimony that Campbell participated in the shooting was unreliable for the reasons discussed above. We disagree. As noted, both Newell and Kerns placed Campbell at the scene, Kerns

6

testified that Campbell admitted firing shots toward the house using a Mossberg shotgun, and shells from a Mossberg shotgun were recovered from the scene and introduced at trial. This evidence is adequate on its face to support a determination that Campbell "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" Jackson's attempted murder. U.S.S.G. § 1B1.3(a)(1)(A). Campbell contends that Kerns and Newell "were heavily impeached and discredited at trial," but the district court was present for their cross-examination; we see no basis for concluding that it clearly erred in its assessment of their credibility. *See United States v. Hurst*, 228 F.3d 751, 761 (6th Cir. 2000) ("The sentencing court's credibility determinations, like other factual findings, must be accepted on review unless shown to be clearly erroneous."). Accordingly, Campbell is not entitled to relief on this claim.

**III.**

We AFFIRM Campbell's conviction and sentence.