RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0061p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────



EVAN ALEXANDER JOHNSON,

*Petitioner-Appellant*,

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

No. 20-2239

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v*.

RAMIAH JEFFERSON,

*Defendant-Appellant*.

No. 21-1617

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:14-cr-20119; 2:19-cv-11270 (Johnson)—Nancy G. Edmunds, District Judge.

Argued: March 9, 2023

Decided and Filed: April 4, 2023

Before: BATCHELDER, GRIFFIN, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Cosmo Pappas, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant Johnson. Harold Gurewitz, GUREWITZ & RABEN, PLC, Detroit, Michigan, for Appellant Jefferson. Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Cosmo Pappas, Melissa M. Salinas, UNIVERSITY OF MICHIGAN, Ann Arbor, Michigan, for Appellant Johnson. Harold

Gurewitz, GUREWITZ & RABEN, PLC, Detroit, Michigan, for Appellant Jefferson.  Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.  In this consolidated appeal, two gangsters convicted under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. §§ 1961-68, challenge their convictions and sentences, raising an unprecedented legal theory—that district courts must apply the "categorical approach" to determine whether a state-law-based crime qualifies as a predicate for "racketeering activity" under § 1961(1)(A). Specifically, they contend that because Michigan's robbery statute is categorically broader than generic robbery, the jury's special verdict that found robbery as a predicate racketeering activity did not establish generic robbery, so it cannot satisfy § 1961(1)(A), and therefore their § 1962(d) convictions and § 1963(a) enhanced sentences are invalid.  We hold that the categorial approach does not apply to § 1961(1)(A) and affirm.

**I.**

A federal jury in Detroit, Michigan, convicted Evan Johnson and Ramiah Jefferson of RICO conspiracy, 18 U.S.C. § 1962(d), and possession of a firearm in furtherance of a crime of violence, § 924(c).  In a special verdict, the jury found that each had intended that another RICO conspirator would commit the racketeering act of robbery, which increased the maximum sentence from 20 years in prison to life, § 1963(a).  The district court sentenced both to below-guidelines 360-month sentences; 300 months for the RICO conspiracy and 60 months for the firearm.  Neither argued at trial or sentencing that the "categorical approach" applied to § 1961(1)(A).

The defendants had individual counsel, and both moved the district court for acquittal or new trial based on claims of insufficient evidence, improper jury instructions, and the invalidity of the RICO statute.  Neither argued that the categorical approach applied to § 1961(1)(A). In denying the motions, the court summarized the voluminous trial evidence that supported the

convictions. *See United States v. Jefferson*, No. 14-20119, 2016 WL 337021, at \*2 (E.D. Mich. Jan. 28, 2016) ("While the specific role of each Defendant is explored more fully [in the opinion], the Government presented a plethora of evidence linking the [gang] to a vast and violent array of criminal conduct including murder, robbery, drug distribution, and weapons possession.").

In their consolidated direct appeal, the defendants still had individual counsel and each raised five issues, but neither claimed that the categorical approach applied to § 1961(1)(A). Johnson claimed that the court violated Federal Rule of Evidence 403 by allowing the prosecution to use his nickname of "Unkle Murda" at trial, and that the evidence was insufficient for his § 924(c) conviction. Jefferson claimed that the court should have suppressed evidence taken from his cell phone, and that § 924(c)(3)(B) was unconstitutionally vague ("the § 924(c) claim"). Both claimed that RICO's sentence enhancement violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that the language of the special verdict form constructively amended the indictment ("the constructive-amendment claim"), and that the court erred in its Guidelines calculations.

We considered each of these claims, rejected them, and affirmed. *United States v. Johnson*, 726 F. App'x 393 (6th Cir. 2018). The constructive-amendment claim and § 924(c) claim warrant brief mention. The defendants' basis for the constructive-amendment claim was that the indictment charged them with conspiring to commit robberies in violation of Michigan Compiled Laws (M.C.L.) §§ 750.529 (armed robbery), 750.529a (carjacking), and 750.530 (robbery), among certain others, whereas the special verdict form asked only: "Did defendant [Johnson/Jefferson] agree and intend that at least one other conspirator would commit a racketeering act of robbery." *Johnson*, 726 F. App'x at 409. In rejecting this constructive-amendment claim, we said: "Those are not two distinct offenses—a robbery in violation of Michigan law *is* a racketeering act of robbery." *Id.* And we then "dispensed with quickly" the § 924(c) claim, which we reviewed for plain error, explaining that published Sixth Circuit precedent "squarely held that 18 U.S.C. § 924(c)(3)(B) is not unconstitutionally vague." *Id.* at 407. But a little over a year later, the Supreme Court would hold in *United States v. Davis*, 588 U.S. --, 139 S. Ct. 2319, 2336 (2019), that § 924(c)(3)(B) *is* unconstitutionally vague.

Johnson filed a timely pro se 28 U.S.C. § 2255 motion, claiming ineffective assistance of counsel (IAC) by his trial and appellate counsel for their failing to raise four arguments, the foremost being that Michigan's robbery statutes are not qualifying RICO predicates under §§ 1961 and 1963(a) because Michigan statutory robbery is broader than the generic definition of robbery (e.g., Michigan statutory robbery does not require the victim's presence whereas generic robbery does).[1]  That is, Johnson's IAC claim rested on his belief that district courts must apply the categorical approach from *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether state-law-based crimes qualify as predicates in §§ 1961 and 1963(a).  Johnson reiterated this same theory in his several amended pro se § 2255 motions, one of which also formally moved to vacate the § 924(c) conviction based on *Davis*, 139 S. Ct. at 2336.

The government agreed that *Davis* required the court to vacate the § 924(c) conviction but countered Johnson's categorical-approach-based IAC claim, asserting that a state-law crime, such as robbery, need only satisfy the "broad definition" of "racketeering activity" set out in § 1961(1)(A) (i.e., "any act or threat involving . . . robbery . . . , which is chargeable under State law"), so "Johnson's attorney . . . did not perform deficiently, or prejudice Johnson in any way, [by] declining to challenge his convictions or sentence on these grounds."  The government argued that § 1961(1)(A)'s plain language (i.e., the breadth of the words "any" and "involving," which are "expansive") and the RICO statute's policy statement (i.e., RICO must be liberally construed to effectuate its remedial purposes of combatting organized crime) mean that a state criminal statute qualifies under § 1961(1)(A) as long as it proscribes "an offense generally known or characterized as involving [the crime]."  *See United States v. Adams*, 722 F.3d 788, 804 (6th Cir. 2013) (relying on *United States v. Licavoli*, 725 F.2d 1040, 1045 (6th Cir. 1984)); *see also Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003) (explaining that "the conduct must be capable of being generically classified as extortionate").

---

[1]Johnson's other three IAC claims were: (1) that Michigan's carjacking statute, which the court used to increase his offense level in his Guidelines calculations, suffers the same failing; (2) that a misdemeanor conviction for marijuana possession was improperly counted in his criminal history; and (3) that the indictment did not specify whether it was charging him under § 924(c)(3)(A) or § 924(c)(3)(B) for the firearm-possession count.  Johnson also cited the Supreme Court's impending *Davis* opinion, which had been argued but not decided, as "an intervening change in [the] law . . . requiring vacatur of the § 924(c) conviction" because it was unconstitutionally vague.

The district court granted Johnson's motion on the § 924(c) claim, vacated that conviction, and explained that it could "grant relief in one of four forms: (1) discharge [him], (2) resentence [him], (3) grant [him] a new trial, or (4) correct [his] sentence." *United States v. Johnson*, No. 14-20119, 2020 WL 6198375, at *2-3 (E.D. Mich. Oct. 22, 2020) (citing *Ajan v. United States*, 731 F.3d 629, 633 (6th Cir. 2013)). The court refused Johnson's request for a de novo resentencing and instead chose to "correct" his sentence by vacating the 60 months for the § 924(c) conviction, but leaving in place the 300-month sentence on the RICO conspiracy conviction. *Id.*

The court denied Johnson's IAC claims. On the claim that "counsel was ineffective because [he] failed to challenge whether armed robbery under Michigan State law qualifies as a RICO predicate act," the court answered that, "as the Sixth Circuit previously found in connection with [Johnson]'s direct appeal, a robbery in violation of Michigan law *is* a racketeering act of robbery." *Id.* (quotation marks and citation omitted). Likewise, on the claim that "[c]ounsel was ineffective in failing to challenge whether carjacking under Michigan law qualifies as a RICO predicate act of robbery," the court answered that Johnson "provides no authority for the proposition that carjacking under Michigan law does not qualify as a RICO predicate act of robbery." *Id.* The court denied Johnson a certificate of appealability (COA).

But on Johnson's pro se motion here, we appointed him counsel and granted a COA "as to whether [his] trial and appellate counsel were ineffective for failing to argue that Michigan armed-robbery and carjacking offenses did not qualify as racketeering activities to support [his] RICO-conspiracy conviction and enhanced sentence." In our order, we relied on *Scheidler* and its citation to *Taylor*, the case in which the Supreme Court adopted the categorical approach. But, after pointing out that *Scheidler* did not use the categorical approach ("*Scheidler* considered the facts [of the offensive conduct] rather than the state statutory definition of extortion."), we expressed uncertainty, saying: "it is unclear whether the categorical approach applies to determine whether a state-law offense qualifies as racketeering activity."

Meanwhile, Johnson's co-conspirator, Jefferson, acting through counsel, had petitioned the Supreme Court for certiorari on the § 924(c) issue, which the Court granted, thereby vacating the judgment and remanding for reconsideration in light of *Davis*. *Jefferson v. United States*,

139 S. Ct. 2772 (2019).  We remanded to the district court for de novo resentencing.  In his sentencing memo, Jefferson raised Johnson's categorical-approach theory, arguing that the "Michigan armed-robbery and carjacking offenses alleged in [the] indictment do not qualify as racketeering activity within the meaning of the RICO statute."  Jefferson also objected to the inclusion of certain relevant conduct in the Presentence Report (PSR), claiming that it was not foreseeable, and objected to the inclusion of a certain criminal history point.

At the sentencing hearing, Jefferson's counsel expressly referred to and relied on our order granting Johnson the COA on the question of whether the Michigan crimes qualified as racketeering activity within the meaning of RICO.  The government answered that (1) no court of appeals has ever applied the categorical approach to § 1961(1)(A); (2) the definition of "racketeering activities" in § 1961(1)(A) is much different from (much broader than) the statutes that require the categorical approach, such as in *Taylor*; (3) when a court applies § 1961(1)(A), it considers the defendant's conduct in committing the instant offense, not a prior conviction; (4) the Fourth Circuit rejected the same challenge to 18 U.S.C. § 1959, an analogous statute, *see United States v. Keene*, 955 F.3d 391 (4th Cir. 2020); and (5) such an approach would effectively read RICO out of existence.  After a brief rebuttal by Jefferson's counsel, the court agreed with the government and concluded succinctly:

> I think that this categorical approach has not been adopted by, certainly not by any Court of Appeals.  And I agree with the government, as well, that the interpretation being argued by the defendant would kind of turn the RICO statute on its head and really undercut a lot of what RICO is trying to do.

The court continued the hearing, ruled on the objections, calculated the advisory guidelines range, considered the § 3553 factors, and sentenced Jefferson to 300 months in prison.  In appealing that sentence, Jefferson presses three claims, but they are variations on the same issue: Did the district court err by refusing to use the categorical approach to decide whether Michigan robbery, armed robbery, and carjacking qualify as racketeering activity in § 1961(1)(A)?

Johnson relies on that issue as the basis for his IAC claims, which he levels at both his trial and appellate counsel.  Johnson also appeals the district court's decision to unilaterally correct his sentence rather than conduct a full de novo resentencing as he requested.  The

government moved to consolidate the appeals and we granted the motion over Jefferson's objection.

## II.

The defendants argue that district courts must use the categorical approach to decide whether a state-law-based predicate crime qualifies as "racketeering activity" under RICO § 1961(1)(A). No court has ever said that. The only appellate court to confront that contention rejected it out of hand. *See United States v. Brown*, 973 F.3d 667, 709 (7th Cir. 2020) ("This argument is not consistent with the text of the statute.").[2] Nor, after a thorough review, are we persuaded. "A matter requiring statutory interpretation is a question of law requiring de novo review, and the starting point for interpretation is the language of the statute itself." *United States v. Vreeland*, 684 F.3d 653, 662 (6th Cir. 2012) (quotation marks and citations omitted).

In the specific construct of this case, the defendants' claim is that § 1961(1)(A) required the district court to use the categorical approach to determine whether Michigan robbery, M.C.L. § 750.530, qualifies as a predicate under "racketeering activity." The indictment also listed armed robbery, § 750.529 (robbery with a dangerous weapon), and carjacking, § 750.529a (robbery of a vehicle). But there is no meaningful distinction among these three offenses for purposes of any of the categorical-approach arguments, analyses, and conclusions central to this opinion. Therefore, a reference hereafter to robbery, § 750.530, necessarily includes and applies equally to armed robbery, § 750.529, and carjacking, § 750.529a.[3]

---

[2]The Seventh Circuit decided this issue in a single, four-sentence paragraph buried in a 50-page opinion:

> The defendants also argue that the 'categorical approach' in *Mathis v. United States*, 579 U.S. 500 (2016), ought to apply in a RICO prosecution. This would require us to discern a 'generic' definition of RICO's predicate offenses and then to limit the government to generic murder, rendering life imprisonment unavailable under Illinois law. This argument is not consistent with the text of the statute. Section 1963 contemplates a statutory enhancement when qualifying circumstances exist.

*Brown*, 973 F.3d at 709 (internal citation modified, other citation omitted).

[3]The indictment also listed four other statutory offenses as predicate racketeering acts of robbery: M.C.L. §§ 750.89 (armed assault with intent to rob and steal), 750.157a (conspiracy to commit a crime), 750.92 (attempt to commit a crime), and 767.39 (accessory). The defendants do not raise any argument concerning any of these offenses, and none has any effect on the analysis or outcome of this opinion.

Under the categorical approach, the court would compare the elements of M.C.L. § 750.530 against the elements of generic robbery; after which § 750.530 would qualify as a predicate only if the court determined that any and every conviction under § 750.530 would also be a conviction as generic robbery, i.e., that § 750.530 is within the bounds of generic robbery. Otherwise, § 750.530 would not be a predicate crime, and the prosecution failed to state a robbery predicate, failed to establish racketeering activity, and failed prove a RICO conspiracy.

But to be clear on the facts (and the construct), neither Johnson nor Jefferson was charged with or convicted of robbery in violation of M.C.L. § 750.530. The federal grand jury indicted Johnson and Jefferson on several federal crimes,[4] the preeminent charge being Count 1, RICO conspiracy, which criminalizes the act of conspiring with an enterprise that affects interstate commerce so as to engage in "a pattern of racketeering activity." 18 U.S.C. § 1962(d) (incorporating §§ (a), (b), & (c)). The only element at issue here is "racketeering activity," which "means any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . , which is chargeable under State law and punishable by imprisonment for more than one year." § 1961(1)(A). The indictment's RICO conspiracy count (Count 1) specified predicate racketeering activities of murder, robbery, and arson under Michigan law, but in its special verdicts, the jury found only robbery: that the defendants did "agree and intend that at least one other conspirator would commit a racketeering act of robbery." The special verdict contained no reference to Michigan law, much less a Michigan statute.

And when instructing the jury, the court made no overt reference to any Michigan statute. The court instructed the jury that the RICO conspiracy charge (Count 1) required evidence sufficient to prove five elements: an enterprise, that affected interstate commerce, the defendant's association with that enterprise, his knowing participation in the conduct of the

---

[4]The other counts in the indictment: Count 2, Murder in Aid of Racketeering Activity, §§ 1959(a)(1) & 2; Count 3, Using and Carrying a Firearm During and in Relation to a Crime of Violence Causing Death, §§ 924 & 2; Count 4, Assault with a Dangerous Weapon in Aid of Racketeering Activity, § 1959(a)(3); Count 5, Using and Carrying a Firearm During and in Relation to a Crime of Violence, § 924(c); Count 6, Possession of a Firearm in Furtherance of a Crime of Violence, §§ 924(c) & 2; and Forfeiture, § 1963(a). Only Counts 1 and 6 were tried to the jury.

enterprise, and his agreement and intent that a conspirator would commit racketeering activities.[5] Racketeering activities, the court explained, were certain criminal acts listed within Count 1 of the indictment, all of which were "themselves violations of either Michigan or United States law," and each of which had to meet certain, specific elements. One of the listed acts was armed robbery, for which the court instructed the jury on four requisite elements: (1) use of force, violence, or threat thereof; (2) to take permanently the victim's property, as in larceny; (3) in the victim's presence; and (4) using a dangerous weapon. There was no objection to this or any of the court's instructions; all parties approved.

It is therefore noteworthy that this robbery instruction was not based on any Michigan statute; the court instructed the jury on the elements of generic armed robbery. "Generic robbery is defined as the misappropriation of property under circumstances involving immediate danger to the person," with "immediate danger" generally meaning "by means of force or putting in fear." *United States v. Camp*, 903 F.3d 594, 601 (6th Cir. 2018) (quotation marks and citation omitted); *United States v. Yates*, 866 F.3d 723, 734 (6th Cir. 2017). The instruction about the special verdict form said: "[I]f you find [a defendant] guilty of the RICO conspiracy charge, you must specify whether he agreed and intended that at least one other conspirator would commit a racketeering act of robbery. In making this finding, please use the definition of robbery that I gave you previously." Again, there was no reference to any Michigan statute.

The defendants' position, of course, is that their conduct as proven at trial, the content of the court's robbery instruction, and the jury's verdict are all irrelevant to whether robbery is a racketeering activity under § 1961(1)(A); only the text of the State's robbery statute is relevant. And because Michigan's robbery statute, M.C.L. § 750.530, covers more than generic robbery, it is not "robbery" under § 1961(1)(A). Taking this argument to its conclusion: § 750.530 covers any and every act of robbery committed in Michigan and § 1961(1)(A) excludes any robbery chargeable under § 750.530; therefore, § 1961(1)(A) would exclude any and every act of robbery committed in Michigan. *Cf. United States v. Brown*, 957 F.3d 679, 686 (6th Cir. 2020) ("Keep in

---

[5]The indictment alleged 73 overt acts, including several robberies, armed robberies, and carjackings. The prosecution proved, and the jury presumably found, multiple acts of robbery. *See Jefferson*, 2016 WL 337021, at *2 ("[T]he Government presented a plethora of evidence linking the [gang] to a vast and violent array of criminal conduct including murder, robbery, drug distribution, and weapons possession."). This is not in dispute.

mind, too, that Congress adopted a yes-or-no categorical approach for the Act. Its generic definition covers *all* convictions under a given state burglary statute or it covers *none* of them."). Under the defendants' view, robbery can never be a racketeering activity in Michigan.

The defendants' argument is as ambitious as it is novel, but stumbles right out of the gate. Our "starting point for interpretation" of racketeering activity under § 1961(1)(A) "is the language of the statute itself." *See Vreeland*, 684 F.3d at 662. As relevant here, "racketeering activity means any [1] act or threat [2] involving . . . robbery . . . , which is [3] chargeable under State law [M.C.L. § 750.530] and punishable by imprisonment for more than one year." § 1961(1)(A) (numbering added). On a plain reading, this encompasses *more* conduct than defined by Michigan's statute, *not less*. Taking the third part first, "chargeable under" § 750.530 can only be read to mean *everything* under that statute. The second part, "involving robbery," does nothing to limit the provision's reach to something less than the State statute, and the first part, "any act or threat," necessarily expands it, most obviously to include a mere inchoate "threat" to commit an act of robbery that would be chargeable under § 750.530. More importantly, maybe most importantly, in this context, all three parts ("any act or threat," "involving robbery," and "chargeable") refer unequivocally to the defendant's conduct, not the State law or the elements of the State statute. And § 1961(1)(A) obviously does not require a *conviction* under § 750.530 or, by its terms, even require evidence sufficient for a conviction; it requires conduct that is *chargeable* under § 750.530. On whole, the plain language of § 1961(1)(A) provides no support for—and actually refutes—the defendants' theory that their conduct is irrelevant.

Along these lines, the defendants' reliance on *United States v. Nardello*, 393 U.S. 286 (1969), actually harms their argument more than it helps. *Nardello* concerned an earlier federal racketeering statute, the Travel Act, 18 U.S.C. § 1952, in which Congress had similarly listed predicate offenses by reference to State law. The Supreme Court recognized that individual states often name and describe the same or similar offenses differently, but rejected both the "assumption that, by defining [the offense] with reference to state law, Congress also incorporated state labels for particular offenses," and the "conclusion that peculiar versions of state terminology are controlling." *Id.* at 293-94. The Court held that § 1952's reference to State

law crimes actually meant the generic definitions of those crimes.  *Id.* at 295.  The defendants read *Nardello* as holding that § 1952 included as permissible predicates only the State laws that were within the bounds of the generic offense and excluded all other State laws, which—the defendants contend—foreshadowed the application of the categorical approach in the present RICO context.

But the *Nardello* Court did not hold, or even suggest, that § 1952 included a criminal act committed in some States, but excluded that same act when criminalized more broadly in other States, or that the generic definition of a crime would invalidate a State offense—the Court would not do that for another 20 years, when it adopted the categorical approach in *Taylor*, 495 U.S. at 600.  The *Nardello* Court did not suggest anything resembling the categorial approach. On the contrary, it held that "the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular State . . . prohibits the extortionate *activity* charged." *Nardello*, 393 U.S. at 295 (emphasis added).  Under *Nardello*, a court considers the defendant's *conduct* and whether a State prohibits that conduct in the generic sense, regardless of the State statute's label or specifics.

The defendants fare no better with their reliance on *Scheidler*, 537 U.S. at 409-11, which concerned a challenge to RICO predicate offenses based on State law extortion.  Citing *Nardello* and *Taylor*, the Court explained that "for a state offense to be an 'act or threat involving extortion, which is chargeable under State law,' as [§ 1961(1)(A)] requires, the *conduct* must be capable of being generically classified as extortionate," and then defined generic extortion as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats."  *Id.* at 409 (editorial marks and citations omitted; emphasis added). Relying on this generic definition of extortion—specifically its requirement that the defendant must "obtain or seek to obtain property"—and making no reference whatsoever to any state extortion statute, *Scheidler* said that "[b]ecause [the defendant] did not obtain or attempt to obtain [the plaintiff's] property, both the state extortion claims and the claim of attempting or conspiring to commit state extortion were fatally flawed," in that the defendant "did not commit or attempt to commit extortion."  *Id.* at 410.  *Scheidler* did not suggest anything resembling the categorial approach.  In *Scheidler*, the court considered the defendant's *conduct* and whether it

violated the State's prohibition on that conduct in the generic sense, regardless of the State statute's label or specifics.  That is exactly what the district court did with the robbery predicate in the present case.

But, backing up, the Supreme Court first adopted the categorical approach in 1990 (20 years after *Nardello* and 13 years before *Scheidler*) in a challenge to a federal statute's sentencing-enhancement provision that imposed a 15-year mandatory minimum sentence for "three previous convictions by any court . . . for a violent felony."  18 U.S.C. § 924(e)(1). The provision in question was § 924(e)(2)(B)(ii), which said, in pertinent part, that "'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary."

In *Taylor*, 495 U.S. at 580, the Court considered whether the Eighth Circuit was correct that "Congress intended 'burglary' to mean whatever the State of the defendant's prior conviction defines as burglary, or whether [Congress] intended that some uniform definition of burglary be applied to all cases in which the Government seeks a § 924(e) enhancement."  *Id*. at 580.  After a lengthy discussion of the statute's legislative history, *id.* at 581-90, the Court rejected the Eighth Circuit's view, finding it "implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction."  *Id.* at 590.  The Court quoted the passage from *Nardello* that rejected the argument "that peculiar versions of state terminology are controlling," *id*. at 592 (quoting *Nardello*, 393 U.S. at 293-94), and labeled that passage "instructive" in its determination "that 'burglary' in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes," *id.*

Next, the *Taylor* Court, referring again to *Nardello*, "concluded that the generic definition of [burglary], rather than a narrow common-law definition, was intended by Congress."  *Id.* at 595 (quotation marks and citation omitted).  This led to the "problem of applying this conclusion to cases in which the state statute under which the defendant [had previously been] convicted . . . define[d] burglary more broadly" than the generic definition.  *Id.* at 599-600.  The solution was, as "[t]he Courts of Appeals uniformly ha[d] held," to apply "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts

underlying those convictions." *Id.* at 600.  This was a clear departure from *Nardello*, 393 U.S. at 295, which directed an inquiry into the defendant's conduct or activity in light of the generic definition of the named predicate crime.  The most glaring difference between the two cases was that the State offense in § 1952 (i.e., *Nardello*) was a contemporaneous issue being adjudicated—effectively an element of § 1952—whereas the State offense in § 924(e)(2)(B)(ii) (i.e., *Taylor*) was a "prior conviction."  The *Taylor* Court justified the categorical approach on three grounds.

The first and foremost ground was § 924(e)'s plain language, which referred to only the existence of a prior conviction, not to the defendant's conduct underlying that prior conviction:

> [1] Section 924(e)(1) refers to 'a person who has three previous convictions' for—not a person who has committed—three previous violent felonies or drug offenses.
>
> [2] Section 924(e)(2)(B)(i) defines 'violent felony' as any crime punishable by imprisonment for more than a year that 'has as an element'—not any crime that, in a particular case, involves—the use or threat of force.
>
> [3] . . . [T]he phrase 'is burglary' in § 924(e)(2)(B)(ii) most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct.

*Id*. at 600-01 (paragraph breaks and numbering inserted; ellipses omitted).  To summarize and emphasize: (1) "convictions," not *has committed an act*; (2) "has as an element," not *involves*; and (3) "is burglary," not *involving* or *chargeable as* burglary.  This language of § 924(e) is different from—virtually opposite—the language of § 1961(1)(A) in the present case.

The *Taylor* Court's other two reasons were legislative history, which established that Congress had, in its earlier iterations of the statute, consistently employed a categorical approach, and a desire to avoid the "daunting" "practical difficult[y] and potential unfairness" of forcing a district court to determine the actual conduct underlying the prior conviction in a different court. *Id*. at 601.  Again, these are different from (opposite) the history and effects of § 1961(1)(A).

In *Descamps v. United States*, 570 U.S. 254, 260 (2013), the Court rejected an attempt under § 924(e) to apply the *modified* categorical approach to an indivisible state criminal statute.  The Court reiterated its "grounds for establishing [its] elements-centric, formal categorical

approach" in *Taylor*.  *Id*. at 267.  The plain language and history of § 924(e)(1) revealed that Congress intended the prior conviction "to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none," with no place for a sentencing court to consider the conduct underlying that conviction.  *Id*. at 267-68.  The Court also drew a sharp distinction between a judge's "merely identifying a prior conviction" and judicial factfinding:

> The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts [underlying the conviction], unanimously and beyond a reasonable doubt.  And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from [non-elements, which constitute] amplifying but legally extraneous circumstances.

*Id*. at 269-70.  And the Court reiterated "the same 'daunting' difficulties and inequities that [would arise] . . . [i]n case after case, [if] sentencing courts . . . ha[d] to expend resources examining (often aged) documents for evidence."  *Id*.  *See also Mathis v. United States*, 579 U.S. 500, 510-13 (2016) (reiterating these reasons in another § 924(e) case).  The language of § 1961(1)(A) does not parallel § 924(e) and there is no "prior conviction"; the evidence of the § 1961(1)(A) predicate crime is necessarily contemporaneously before the court; and, critical to the Sixth Amendment, the facts are found by a jury.  There is no judicial fact finding in § 1961(1)(A).

In *Davis*, 139 S. Ct. at 2323, the Court considered § 924(c)'s residual clause, which required judges to decide whether a charged offense, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," § 924(c)(3)(B).  Conceding that the categorical approach would render the clause unconstitutionally vague, the government argued that § 924(c) did *not* require the categorical approach, but instead required a "case specific method that would look to the defendant's actual conduct in the predicate offense."  *Id*. at 2326-27 (quotation marks and citations omitted).  The Court immediately acknowledged a significant difference from the prior categorical-approach cases, namely that "a § 924(c) prosecution focuses on the conduct with which the defendant is *currently charged*."  *Id*. at 2327.  But, the Court explained, while Congress *could have* written § 924(c)'s residual clause "using a case-specific approach," the

question was whether it did, and the "answer [to] *that* question" was based on § 924(c)'s "text, context, and history." *Id.*

Relying on its prior analysis of virtually identical statutory language in other cases,[6] the *Davis* Court focused on two phrases, "an offense that is a felony" and "by its nature," in § 924(c)(3)(B) ("For purposes of this subsection the term 'crime of violence' means an offense that is a felony and . . . by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."). Because this peculiar language "speaks of an offense that, 'by its nature,' involves a certain type of risk[,] . . . that would be an exceedingly strange way of referring to the circumstances of a specific offender's conduct." *Id.* at 2329. "[W]hen we speak of the nature of an offense, we're talking about what an offense normally—or . . . 'ordinarily'—entails, not what happened to occur on one occasion." *Id.* (quotation marks and citations omitted). "This language requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Id.* at 2328 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004)). The Court also rejected arguments that the word "involves," the present tense, and the absence of the word "conviction" supported a case-specific approach, concluding that, when read in context, the present tense favored a categorical approach, while the word "involves" did "not favor either reading," and the word "conviction" is not a "prerequisite for the categorical approach." *Id.* at 2335.

---

[6]This case, *United States v. Davis*, 588 U.S. --, 139 S. Ct. 2319 (2019), was the third of three cases in which the Court invalidated three virtually identical federal statutes on the ground that, due to the requisite application of the categorical approach, each was unconstitutionally vague.

In the first, *Johnson v. United States*, 576 U.S. 591 (2015), the Court considered § 924(e)'s "residual clause," which required judges to use the categorical approach to decide whether a prior offense was a "violent felony" by "pictur[ing] the kind of conduct that the crime involves in 'the ordinary case,' and [guessing] whether that abstraction presents a serious potential risk of physical injury." *Id.* at 596. "[T]he indeterminacy of [such a] wide-ranging inquiry," the Court held, "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 597.

In the second, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Court considered 18 U.S.C. § 16's "residual clause," which likewise required judges to use the categorical approach to decide whether a prior offense "involve[d] a substantial risk of physical force" by "pictur[ing] the kind of conduct that the crime involves in 'the ordinary case,' and [guessing] whether that abstraction presents some not-well-specified-yet-sufficiently-large degree of risk." *Id.* at 1216. The Court held this was "more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

Recall that § 1961(1)(A), the statute at issue here, defines "racketeering activity" as "any act or threat involving [a listed crime], which is chargeable under State law and punishable by imprisonment for more than one year." Cleary this does not include "offense" or "by its nature," thus avoiding a direct hit from *Davis*. Nor would this be "an exceedingly strange way of referring to the circumstances of a [defendant's actual] conduct," given the words "act or threat" and "chargeable." Finally, consider the different contexts in which the two statutes use "involve": in § 924(c)(3)(B) (i.e., *Davis*), "an offense that *involves* a substantial risk," uses "involve" to refer to the substance of the offense; whereas in § 1961(1)(A), an "act or threat involving" a named crime uses "involve" to refer to the substance of the defendant's conduct or criminal act.

This is consistent with the Court's assessment of Congress's use of the word "involving" in 18 U.S.C. § 924(e)(2)(A)(ii). *Shular v. United States*, 140 S. Ct. 779, 785 (2020). In *Shular*, the Court opined that, if Congress meant to refer to generic offenses rather than case-specific conduct, "it would have been far more natural" for it to follow the approach it took in drafting the enumerated-offense clauses, in which it used the word "is," not the word "involving." *Id*. "There, the word 'is' indicates a congruence between 'crime' and the terms that follow, terms that are also crimes," as in § 924(e)(2)(B)(ii), "crime that 'is burglary, arson, or extortion.'" *Id*. But in § 924(e)(2)(A)(ii), "Congress did not adopt that formulation . . . , opting instead for language suited to conduct." *Id*. The same can be said for § 1961(1)(A). Congress could have said: "any act or threat that *is* robbery," but it did not. It said: "any act or threat involving robbery."

Finally, in *Keene*, 955 F.3d at 392, the Fourth Circuit considered a defendant's claim that the categorical approach applies to 18 U.S.C. § 1959 ("Violent crimes in aid of racketeering activity" or "VICAR"), which is analogous to § 1961(1)(A). *Keene* rejected the claim, finding that neither § 1959's statutory language nor the categorical approach's underlying policy rationale could support it. *Id*. at 393. Specifically, (1) "the most natural reading of the statute does not require any comparison whatsoever between the two offenses"; (2) the use of the "present tense" requires that the "defendant's presently charged conduct constitute" the crime; (3) the "statute includes no language suggesting that all violations of a state law also must

qualify as the enumerated federal offense"; and (4) the statute "contains none of the words or phrases that have triggered use of the categorical approach in other federal statutes." *Id*. at 397. Also, (5) because the statute "refers only to presently charged conduct, courts are not required to reconstruct the facts underlying previous convictions . . . [a]nd the jury, not the judge, will determine whether the defendant committed the offenses charged in the indictment, eliminating any Sixth Amendment concerns." *Id*. at 398 (citations omitted). Therefore, § 1959 "requires only that a defendant's *conduct*, presently before the court, constitute . . . the charged state crime." *Id.* at 393.

This same rationale applies to § 1961(1)(A) and nothing in the Supreme Court caselaw dictates otherwise. We hold that the categorical approach does not apply to a RICO prosecution because it "is not consistent with the text of" § 1961(1)(A). *See Brown*, 973 F.3d at 709.

**III.**

Although the two defendants have taken different procedural paths and raise different claims of error, both rely on their failed contention that the district court was required to use the categorical approach in applying § 1961(1)(A). Consequently, those claims fail.

**A.**

Jefferson contends that the district court miscalculated his sentence by increasing the statutory maximum due to the underlying armed robbery predicate, and the base offense level by using the underlying carjacking as relevant conduct. Both theories rely on Jefferson's premise that the categorical approach removes Michigan armed robbery and carjacking from the field of possible predicates, so they were not available for use in his sentencing determination.

Under the RICO penalty provision, the maximum penalty is 20 years in prison unless the predicate racketeering activity has a penalty of life, which raises the RICO maximum to life. § 1963(a). Michigan armed robbery carries a maximum of life. M.C.L. § 750.529(2). Because the prosecutor proved armed robbery to the jury, based on the jury instructions and the jury's special verdict, the court appropriately applied § 1963(a) to raise the maximum sentence.

The sentencing guideline for § 1962 offenses sets the base offense level at the greater of 19 or "the offense level applicable to the underlying racketeering activity."  U.S.S.G. § 2E1.1. "Conduct is 'underlying racketeering activity' under § 2E1.1 if it is 'relevant conduct' as defined in U.S.S.G. § 1B1.3(a)(1)."  *United States v. Campbell*, 567 F. App'x 422, 425 (6th Cir. 2014) (quoting *United States v. Tocco*, 306 F.3d 279, 286 (6th Cir. 2002)).  "The Guidelines understand 'relevant conduct' to include all acts that were part of the same 'common scheme or plan as the offense of conviction,' regardless of whether that act was the specific subject of the indictment." *United States v. Skouteris*, 51 F.4th 658, 672 (6th Cir. 2022).  The relevant-conduct provision "is primarily expansive in nature—it allows the court to adjust the base offense level to account for certain uncharged conduct."  *United States v. Osborn*, 12 F.4th 634, 638 (6th Cir. 2021).

Here, the court agreed with the PSR's determination that carjacking qualified as relevant conduct, so the base offense level was 33 based on the guideline for carjacking, § 2B3.1, and the applicable adjustments therein.  There was no error in the district court's sentencing.

**B.**

Johnson directs an IAC claim at his trial counsel, contending that counsel should have argued his current contention that the categorical approach applied to § 1961(1)(A).  To prevail, Johnson must show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and resulted in prejudice, such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Given that the categorical-approach premise was not a successful theory, Johnson can make neither showing.

Moreover, we assess counsel's performance based on "counsel's perspective at the time," *id*. at 689, "considering all the circumstances," *id*. at 688, rather than "in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002).  At the time of Johnson's trial and sentencing—indeed, right up until now—no court has ever held that the categorical approach applies to § 1961(1)(A), and we are aware of only one other opinion to even mention this theory, namely *Brown*, 973 F.3d at 709, which rejected it and was not published until August 2020, some five years after Johnson's trial and sentencing.  "[W]e have repeatedly held that counsel is

not ineffective for failing to predict developments in the law." *Bullard v. United States*, 937 F.3d 654, 661 (6th Cir. 2019) (quotation marks and citations omitted). Here, there has been no development to predict. Johnson's trial counsel was not ineffective.

**C.**

Johnson directs an IAC claim at the counsel for his direct appeal, contending that counsel should have argued that the categorical approach applied to § 1961(1)(A). As the Supreme Court has explained, "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.*

Given that this issue was never raised in the trial court, review would have been for plain error. *See United States v. Hughes*, 562 F. App'x 393, 399 (6th Cir. 2014). That alone might be enough to demonstrate that this issue was not "plainly stronger than" the issues actually raised. Regardless, because this was not—and is not—a successful theory, it was not stronger than any other issue.

We also review appellate IAC under the *Strickland* standard of deficient performance that caused prejudice. As with his IAC claim against his trial counsel, Johnson can show neither.

**D.**

Finally, Johnson contends that, after granting his § 2255 motion on the § 924(c) claim, the district court erred by unilaterally correcting his sentence rather than conducting a resentencing hearing and proceeding de novo. "We review for an abuse of discretion the form of relief that the district court granted under § 2255." *United States v. Flack*, 941 F.3d 238, 240 (6th Cir. 2019).

"Section 2255 gives district [courts] wide berth in choosing the proper scope of post–2255 proceedings," and prescribes "relief in one of four forms as may appear appropriate when a motion is found to be meritorious: discharge the prisoner, resentence the prisoner, grant a new trial, or correct the sentence." *Ajan*, 731 F.3d at 633 (quotation marks and citations omitted)

(citing 28 U.S.C. § 2255(b)).  "[A] court may 'correct' a defendant's sentence without holding a resentencing hearing."  *Flack*, 941 F.3d at 240 (quotation marks and citations omitted).

"A district court 'corrects' a defendant's sentence when its action is arithmetical, technical, or mechanical."  *Id.* (citing Fed. R. Crim. P. 35(a)).  "For example, the court corrects a sentence when [it] . . . does no more than mechanically vacate unlawful convictions and accompanying sentences."  *Id*. (quotation marks, editorial marks, and citations omitted).  "In contrast, a [] court resentences the defendant, for purposes of § 2255, when it revisits the § 3553(a) factors and determines anew what the sentence should be."  *Id*.  Here, the court vacated Johnson's § 924(c) conviction and its accompanying 60-month additional sentence, but left the 300-month sentence on the RICO conspiracy conviction, without recalculating any guidelines, revisiting the § 3553 factors, or deciding anew what the sentence should be. *Johnson*, 2020 WL 6198375, at *3.

Johnson contends that "[t]he [district] court's decision to maintain his sentence on the RICO conspiracy conviction *explicitly* rested on a *reevaluation* of the original sentence under the § 3553(a) factors," namely, its "weighing" of the § 3553 factors.  Johnson Apt. Br. at 34-35 (emphasis added); *see also* Johnson Reply Br. at 23-24.  This mischaracterizes the record.  The court actually said, in answer to government's point that the court "could vacate the original judgment and resentence [Johnson] to an even lengthier term of imprisonment," that it did "not believe that approach [wa]s necessary":

> Instead, having considered the entire record in this matter as well as the sentencing factors described in 18 U.S.C. § 3553(a), the [c]ourt, in the exercise of its discretion, finds that the proper approach is to correct [Johnson]'s sentence by vacating [his] § 924(c) conviction and leaving [his] 300-month sentence on count one intact.

*Johnson*, 2020 WL 6198375, at *3.  A reasonable—and arguably *the most* reasonable—reading of that passage is: having *previously* considered the entire record in this matter as well as the sentencing factors described in 18 U.S.C. § 3553(a) *at Johnson's prior sentencing*.

The above passage does not constitute an *explicit reevaluation* of the sentence by *reweighing* the factors.  Regardless, even if the district court, in the sanctity of chambers, privately reviewed the record and the § 3553 factors, it did not reveal any reweighing or

"determine anew what the sentence should be." *See Flack*, 941 F.3d at 240.  At most, it chose to leave undisturbed the original (below guidelines) RICO conspiracy sentence.[7]

The district court did not abuse its discretion by choosing to correct Johnson's sentence rather than conduct a full de novo resentencing.  And a district court's explanation as to why it found correction to be appropriate (or resentencing inappropriate) is not only permissible but commendable.

## IV.

For the forgoing reasons, we AFFIRM the judgments of the district court.

---

[7]Johnson's total offense level was 42, his criminal history category was III, and the resulting guidelines range for the RICO conspiracy (Count 1) was 360 months to life.